## Geo. M. Pullman v. Secord-Hopkins Company.

1. LIMITATIONS—*Rule Where an Amended Declaration is Filed.*—If the cause of action stated in an amended declaration is not a mere re-statement in different form of the cause of action stated in the original declaration, but is a new and different cause of action, then the plea of the statute of limitations is a complete bar to the cause of action stated in the amended declaration if it appears that the time which elapsed from the date when said cause of action accrued to the plaintiff, to the time of the filing of the amended declaration exceeds the time allowed by the statute.

2. SAME—*Where an Amended Declaration is Filed the Identity of the Causes of Action Must be Tested by the Pleadings.*—Where the question arises whether the cause of action stated in an amended declaration is a separate and distinct cause of action from that stated in the original declaration, it must be decided solely by an inspection and comparison of the original and amended declarations.

3. SAME—*Plea of the Statute of Limitations Sustained, Where an Amended Declaration was Filed.*—The court discussed the original and amended declarations filed in this case and holds that the undertaking of the defendant alleged in the original declaration, on the conditions therein stated, and the promise alleged in the amended declaration on the conditions therein stated are essentially different undertakings with different persons, at different times and on materially different conditions, and are essentially distinct and different causes of action, and that the plea of the statute of limitations presents a complete defense to the cause of action stated in the amended declaration.

Trespass on the Case changed to Assumpsit by amendment. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1897. Reversed. Opinion filed January 6, 1898.

RUNNELLS & BURRY, attorneys for appellant.

ASAY & CLARE and JAMES W. DUNCAN, attorneys for appellee.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

John P. Hopkins and Frederick H. Secord commenced an action on the case against appellant October

26, 1891. On that day they filed a declaration, substantially as follows:

"John P. Hopkins and Frederick H. Secord complain of George M. Pullman, of a plea of trespass on the case, and thereupon the said John P. Hopkins and Frederick H. Secord, by W. C. Asay, their attorney, complain, for that whereas before and at the time of the committing of the grievances by the said defendant, as hereinafter mentioned, the said defendant was greatly interested financially in a certain corporation then and there doing business in said county, and known as, to wit, the Pullman Palace Car Company, in which said company and its enterprises the said defendant then and there invested a very large sum of money, to wit, one million dollars and upward, and which said corporation then and there owned and controlled a certain property or place called 'Pullman,' then and now situated in said county; that said place 'Pullman' was originally constructed as a village in which the workmen, who were then and now engaged in the employ of said company, might locate their homes, and which might thus become a great source of revenue and profit to said company as well as to said defendant. That said company erected in said 'Pullman' a certain building known as the 'Arcade' building, which said building then and there contained a large number of stores and offices and a theatre, and which building was designed to hold all the stores and offices for persons doing business at said 'Pullman,' and from which said stores and offices the said company expected to realize large profits by way of rents. That said 'Pullman,' including said 'Arcade' building, was built by said company on or about, to wit, A. D. 1880; and from thence up to or about, to wit, the month of October, A. D. 1885, said 'Arcade' building had been substantially unoccupied,

and up to, to wit, said October, 1885, the purposes for which it had been built had totally failed because up to said last mentioned date all tradesmen who had theretofore engaged in business in said 'Arcade' building had been unable to made the same pay; thus causing large financial loss both to said company and said defendant. That for many years, prior to said October, 1885, the said defendant had obtained, and then and there had, the entire and fullest confidence of said plaintiffs and each of them, and was then and there desirous of getting said plaintiffs to engage in business and rent from said company certain stores in said 'Arcade' building, which were then and there unoccupied, and unproductive to said defendant; whereby, by reason of renting aforesaid the defendant well hoped to make said unproductive property productive and profitable to himself and said company, and thus increase the rental of all of said property in said 'Pullman.'

"And the said defendant, on or about, to wit: The month of October, A. D. 1885, at the county of Cook and State of Illinois, aforesaid, wrongfully contriving to carry out said scheme aforesaid, requested and urged the said plaintiffs to raise as much ready money as they could and form a corporation, which the said defendant then and there requested the said plaintiffs to call the 'Arcade Trading Company,' then and there falsely alleging, as his reason for such request, that he, the said defendant, greatly desired to perpetuate the said name of 'Arcade,' and permanently identify plaintiffs' business therewith. And the said defendant then and there, for the purpose of inducing the plaintiff to form the corporation and lease the premises as aforesaid wrongfully and injuriously, contriving and intending to deceive, defraud and injure said plaintiffs in this behalf, then and there falsely, fraudulently and deceitfully represented and assured to the said plaintiffs that

if they, the said plaintiffs, would form the corporation aforesaid, and engage in business at the place aforesaid, that he, the said defendant, personally, would see to it that said plaintiffs should have as many stores in said building as they, the said plaintiffs, desired, at a rental of $100 per month for each. and every store so occupied by them. And the said defendant then and there further requested that, for the purpose of keeping the other tenants in said building ignorant of the terms of his agreement aforesaid, he desired and requested the 'Arcade Trading Company' to execute a lease of the first stores occupied by it from the said 'Pullman Palace Car Company' at a face value rental in excess of said $100 per month as aforesaid, whereupon heretofore, to wit: On the day and year last aforesaid, at the county and State aforesaid, the said plaintiffs fully confiding in the said representations, assertions and agreement of said defendant, at the special instance and request of said defendant, raised all the ready money they could, formed a corporation known as 'The Arcade Trading Company,' the stock of which then and there was and now is substantially all owned and controlled by said plaintiffs, and then and there procured said 'Arcade Trading Company' to execute a lease from said 'Pullman Palace Car Company,' to wit, at a face value rental in excess of said $100 per month per store as aforesaid, and in good faith purchased a large stock of goods, to wit, of the value of $10,000, which said stock of goods was especially adapted to said location and trade, and then and there established the business aforesaid at the place aforesaid, occupying, in the first instance, to wit, two of said stores, and from time to time as their said business grew in volume, and at the special instance and request of said defendant, the said plaintiffs occupied additional stores in said 'Arcade' building. And from

thence up to or about, to wit, December, 1889, the said plaintiffs worked diligently to establish and did establish and create a large and prosperous business at the place aforesaid, which said business, together with the good will thereto pertaining, was then and there of great value to wit, $10,000, to said plaintiffs, largely because of its said location and trade therein created. That from, to wit, July, 1887, until to wit, December, 1889, the said defendant utterly regardless of his representations, assertions and agreements aforesaid, wrongfully and injuriously refused to return or make good any sums of money which the said 'Arcade Trading Company' or the said plaintiffs had paid to said 'Pullman Palace Car Company' as rent for the premises in said 'Arcade' building in excess of the amount of $100 per month per store as agreed upon aforesaid, and which said amount paid to said 'Pullman Palace Car Company' in excess as aforesaid, amounted to a large sum of money, to wit, $10,000, although the said defendant has frequently been requested to do so; but on the contrary, the said defendant from, to wit, July, 1887, until to wit, December, 1889, wrongfully and injuriously tried in every way possible to compel the said plaintiffs to give up possession of the store so occupied by them in said 'Arcade' building as aforesaid, and move away therefrom, in order that the said stores, which had been rendered of great value, to wit, of the value or $10,000, by reason of plaintiffs having conducted a successful business therein, might revert back to said defendant and said 'Pullman Palace Car Company,' together with the good will and trade therein established. That sometime in, to wit, October, 1889, said defendant, wrongfully and injuriously contriving and conspiring in the premises to compel the said plaintiffs to quit and render up possession of said stores, procured the said com-

Pullman v. Secord-Hopkins Co.

pany to notify said plaintiffs and said 'Arcade Trading Company' that it had terminated the lease aforesaid, and otherwise force said plaintiffs to give up said stores and leave said 'Pullman;' which, in, to wit, December, 1889, said plaintiffs were forced to do, by means whereof all the said several sums of money expended by the said plaintiffs in forming the said 'Arcade Trading Company,' in building up its business and good will, in payments of the said 'Pullman Palace Car Company,' of the excess of rent as aforesaid, of the large sums of money laid out and expended by the plaintiffs in removing their said large stock of goods to where the same now is, and which is now, because of the change of location, greatly depreciated in value, to the extent, to wit, of $10,000, all of which has become wholly lost to the said plaintiffs," etc.

To the foregoing declaration the defendant pleaded the general issue.

January 25, 1896, on motion of attorneys for the plaintiffs, the form of action was changed from case to assumpsit, and leave was given to the plaintiffs to file an amended declaration, and January 27, 1896, the plaintiffs filed a declaration substantially as follows:

"And now comes the said plaintiff, the Secord–Hopkins Company, a corporation existing and doing business under and by virtue of the laws of the State of Illinois, and formerly named The Arcade Trading Company, by W. C. Asay and Duncan & Gilbert, its attorneys, and by leave of court first had and obtained, files herein the following amended declaration and complains of the said defendant, George M. Pullman, of a plea of trespass on the case on promises.

"For that whereas, before and on, to wit, the first day of July, A. D. 1887, and during all the times hereinafter mentioned at, to wit, the county aforesaid, the said defendant was greatly interested pecuniarily and

financially as a stockholder in and as the president of a certain corporation at, before and during the times aforesaid doing business in said county and known as Pullman's Palace Car Company; that said defendant then and there and during all the times aforesaid had and held invested in said last named company and the enterprises by it then and there owned and carried on, a very large sum of money, to wit, the sum of $1,000,000 and upwards; that said Pullman's Palace Car Company then and there owned and controlled a certain property and place called 'Pullman,' then and now situated in said county of Cook; that said Pullman's Palace Car Company before said time and on, to wit, the first day of October, A. D. 1885, had erected and then and there controlled at said place called 'Pullman' a certain extensive building then and there known as the 'Arcade' building, which said building then and there contained a large number of rooms for stores and offices and a theatre, which said stores and offices the said Pullman's Palace Car Company then and there held and owned for the purpose of renting to persons and tenants as and for offices and stores aforesaid; and the plaintiff avers that at and for a long time prior to the said time when, etc., many of said store rooms, to wit, four of the said store rooms, were and had been vacant and unoccupied and produced no rent or profit to the said Pullman's Palace Car Company, to the great loss of said Pullman's Palace Car Company, and of said defendant, so interested financially and as president as aforesaid therein; and plaintiff avers that at and before the said term when, etc., the said Pullman's Palace Car Company had prepared and then and there kept a list or schedule of rental rates of the several stores and offices in said 'Arcade' building, in which list or schedule was set out and shown the monthly and yearly rate of rental upon each of said store rooms, and that the monthly rate of

rent upon each of four of said stores hereinafter mentioned according to said list and schedule was in excess of the sum of one hundred dollars, to wit, of the sum respectively of one hundred and fifty dollars, one hundred and thirty-three and one third dollars, one hunhundred and sixteen and two thirds dollars, and one hundred and fifty dollars; and plaintiff avers that on and from, to wit, the first day of July, A. D. 1885, the Arcade Trading Company was a corporation duly and regularly organized under and by virtue of the laws of the State of Illinois, and that such corporation continued to exist and do business under the said name of the Arcade Trading Company until, to wit, the first day of May, A. D. 1889, and that on, to wit, said last named date the name of said Arcade Trading Company was, conformably to the provisions of the statutes of Illinois in such cases made and provided, changed to the Secord–Hopkins Company, the present name of the plaintiff herein, and so the plaintiff avers that the said Arcade Trading Company and the plaintiff, the Secord–Hopkins Company, are one and the same.

"And plaintiff avers that before and on, to wit, the first day of January, A. D. 1887, it was in the possession and occupancy of said four store rooms under agreement between plaintiff and said defendant that it, the plaintiff, should enter, use and occupy said stores as the tenant of said Pullman's Palace Car Company under a letting from said last named company, and should actually pay said Pullman's Palace Car Company as monthly rent therefor the sum of $100 for each of said four stores so long as it, the plaintiff, might continue to occupy the same, but that according to the terms of the said letting by said Pullman's Palace Car Company, to the plaintiff, the rent named to be paid monthly to said Pullman's Palace Car Company, by the plaintiff for said stores respectively, would be the

said respective monthly rates as fixed by said list or schedule, as aforesaid, and that he, the said defendant, in consideration of plaintiff occupying and paying rent for said stores in manner aforesaid, would adjust monthly with said Pullman's Palace Car Company the difference between the amount of said monthly rent so to be actually paid by plaintiff as aforesaid, at the rate of $1.00 per month for each of said stores, and the amount of said monthly rent according to said list and schedule, and would in all things protect and save the plaintiff from all liability for said difference; and plaintiff avers that under said agreement with defendant, it, on, to wit, the first day of January, A. D. 1887, entered into and occupied said four stores and paid rent therefor to said Pullman's Palace Car Company at the rate of $100 per month for each one of said stores, and continued so to do down to and until, to wit, the first day of June, A. D. 1887.

"And plaintiff avers that on, to wit, the first day of July, A. D. 1887, and while the plaintiff was so in the occupancy of said four stores the defendant agreed to and with the plaintiff that if it, the plaintiff, would pay to the Pullman's Palace Car Company the sum of, to wit, $750, and also pay to the Pullman's Palace Car Company monthly, from, to wit, the first day of June, A. D. 1887, rent for said four stores, so long as it might continue to occupy the same, at and according to the said monthly rates fixed respectively for said four stores by said schedule and list, that he, the said defendant, would pay to said plaintiff the said sum of $750, and would also pay to the plaintiff the difference between the amount of the said monthly rent of said four stores at the said list and schedule rates and the amount of such monthly rent of said four stores at the rate of $100 per month for each of said stores, so long as plaintiff might continue to occupy the same, and

pay the monthly rent as aforesaid according to said list and schedule rates. And plaintiff avers that it, the plaintiff, then and there, and in pursuance of said agreement with defendant, paid and caused to be paid to the said Pullman's Palace Car Company the said sum of $750, and occupied said four stores from, to wit, the first day of June, A. D. 1887, continuously down to and including to wit, the month of November, A. D. 1889, and during all that time paid to the said Pullman's Palace Car Company, monthly, rent for said four stores at the said list and schedule rates per month, in all things as by said agreement between defendant and plaintiff was provided and agreed; and plaintiff avers that the difference between the amount of rent monthly of said four stores as shown by said list and schedule and the amount of rent therefor at the rate of $100 per month for each of said stores was and is the sum of $150; whereby and by means of the premises, the defendant then and there became and was liable to pay to the plaintiff the sum of $150 for each and every month for which plaintiff occupied said stores and paid monthly rent as aforesaid at said list and schedule rate, together with said sum of $750; and being so liable, the defendant promised the plaintiff to pay it the said sums of money when thereunto requested."

A demurrer of defendant to the amended declaration, assigning, among other causes of demurrer, that the causes of action stated in the amended declaration occurred more than five years prior to the filing of the same, was overruled, and April 16, 1896, the defendant pleaded the general issue and six special pleas to the amended declaration, among which was a plea of the statute of limitations, viz., that the causes of action in the amended declaration did not accrue to the plaintiff within five years before the commencement of the

suit.   Issues were made upon these pleas, and the jury found for the plaintiff, and assessed the damages at the sum of $5,100, and judgment was entered on the verdict.

The court refused to give the following instruction asked by the defendant:

"The jury are instructed that under the law and the evidence in this case the claims of the plaintiff, the Secord-Hopkins Company, against the defendant, George M. Pullman, as set forth in the declaration in this cause, are barred by lapse of time, and that the jury must return a verdict in favor of the defendant."

The amended declaration having been filed January 27, 1896, if the cause of action stated therein is not a mere restatement, in different form, of the cause of action stated in the original declaration, but is a new and different cause of action, and accrued to the plaintiff more than five years before the filing of the amended declaration, then the plea of the statute of limitation was a complete bar to the cause of action stated in that declaration.

In Chicago, B. & Q. R. R. Co. v. Jones, 149 Ill. 361, 397, the court say: "Where the amendment introduces a new or different cause of action, it is treated as a fresh suit, begun at the time when such amendment is filed, and the statute is asserted at that point."

Fish v. Farwell, 160 Ill. 236, 247, and cases cited.

Such being the law, if the amended declaration states a new and distinct cause of action, the filing of it is to be regarded as the commencement of a suit for the cause of action so stated in it.   The question therefore is, whether the cause of action stated in the amended declaration is a separate and distinct cause of action from those stated in the original declaration.   This question must be determined solely by inspection and

comparisons of the original and amended declarations.

In Fish v. Farwell, *supra*, the court say: "The allegations contained in the original declaration, and also those found in the additional counts, are in the record of the very cause that is before the court for adjudication. In the nature of things, there are no extrinsic facts by which they are to be explained. They lie open to the court, and are subject to its inspection and consideration, and the court must determine, as a question of law, whether the causes of action appearing in the additional or amended pleadings are separate and distinct causes of action from those originally declared upon, or mere restatements, in different form, of the same causes of action declared upon in the original declaration." Ib. 243.

The original declaration corresponds with the summons in naming as the plaintiffs John P. Hopkins and Frederick H. Secord, as individuals, against the defendant. It is framed in case for deceitful and fraudulent representations, and the damages are alleged to be to the plaintiffs, Hopkins and Secord, as individuals. The only undertaking of the defendant alleged in that declaration is alleged to have been made with the plaintiffs as individuals, and is thus stated: "That if they, the said plaintiffs, would form the corporation aforesaid, and engage in the business at the place aforesaid, that he, the said defendant, personally, would see to it that said plaintiffs should have as many stores in said building as they, the said plaintiffs, desired, and for as long a time as they, the said plaintiffs desired, at a rental of $100 per month for each and every store so occupied by them." The time of this undertaking is alleged to have been in October, 1885, and prior to the organization of the Acade Trading Company.

It is averred that the defendant, at the time of

of the alleged undertaking by him, was largely interested in the Pullman Palace Car Company, and that said company owned the Arcade building in which the stores in question were situated, but it is not averred that the defendant had any official position in the Pullman Palace Car Company, or any authority to lease the stores in question, or make any contract in regard to them. The statement is, "that he, the said defendant, *personally*, would see to it," etc. The alleged undertaking of the defendant, interpreted most favorably for the plaintiffs, is that he undertook, on the conditions mentioned, to use his influence with the Pullman Palace Car Company to procure, and would procure, the consent of that company, that the then plaintiffs might occupy as many stores in the Arcade building as they might desire to occupy, and for as long a time as they might desire to occupy them, at a rental of $100 per month for each store.

It is averred in the amended declaration that the Arcade Trading Company about May 1, 1889, changed its name to the Secord-Hopkins Company. The amended declaration, filed in the name of the Secord-Hopkins Company, as plaintiff, counts on a promise alleged to have been made to that company July 1, 1887, and avers as follows:

"And plaintiff avers that on, to wit, the first day of July, A. D. 1887, and while the plaintiff was so in the occupancy of said four stores the defendant agreed to and with the plaintiff that *if it, the plaintiff, would pay to the Pullman Palace Car Company the sum of, to wit, $750, and also pay to the Pullman Palace Car Company monthly from, to wit, the first day of June, A. D. 1887, rent for said four stores, so long as it might continue to occupy the same, at and according to the said monthly rates fixed respectively for said four stores by said schedule and list,* that he, the said defendant, would pay to

said plaintiff the said sum of $750, and would also pay to the plaintiff the difference between the amount of the said monthly rent of said four stores at the said list and schedule rates, and the amount of such monthly rent of said four stores at the rate of $100 per month for each of said stores, so long as plaintiff might continue to occupy the same, and pay the monthly rent as aforesaid according to said list and schedule rates."

Here we have an express promise by the appellant, July 1, 1887, to the Secord-Hopkins Company, a corporation, that if said corporation would pay to the Pullman Palace Car Company $750, and also pay thereafter, to said company, monthly rent for each store from June 1, 1887, at the company's schedule rates, he, appellant, would repay to said corporation $750, and also the difference between the Pullman Company's schedule rates and $100 per month for each store, etc. This is the promise on which appellee's counsel say, in their argument, the suit was brought, and on which they reply.

Appellant's undertaking, as stated in the original declaration, was, as we have seen, with Hopkins and Secord individually, before the organization of the Arcade Company, and was that he would procure the consent of the Palace Car Company to the occupancy of the stores by the plaintiffs, Hopkins and Secord, at a certain rental.

The original declaration further avers that the undertaking of the defendant was on the condition "if they, the plaintiffs, would form the corporation aforesaid, and engage in business at the place aforesaid, that he, the said defendant, personally, would see to it," etc.

We think it clear that the undertaking of the defendant with Secord and Hopkins alleged in the original declaration, on the conditions therein stated, and the promise alleged in the amended declaration to

have been made to the Secord-Hopkins Company, on the conditions in the latter declaration stated, are essentially different undertakings with different persons, at different times, and on materially different conditions, and (conceding that the original declaration states a good cause of action) are essentially distinct and different causes of action. Had the undertaking stated in the original declaration been with, and the promise stated in the amended declaration to, the same party, the conclusion would be the same. The court has held causes of action, stated in original and amended declarations, distinct and separate in cases much more favorable for the plaintiff than is the present case for the appellee. Illinois C. R. R. Co. v. Cobb et al., 64 Ill. 128; Chicago, B. & Q. R. R. Co. v. Jones, 149 Ib. 361; Phelps v. Ill. C. R. R. Co., 94 Ib. 548; Eylenfeldt v. Ill. Steel Co., 165 Ill. 185.

Appellee's counsel have cited a number of cases, none of which has any application to the question whether different causes of action are stated in the original and amended declarations.

Citizens' Gas L. Co. v. Granger et al., 118 Ill. 266; Flower v. Brumbach, 131 Ib. 646; and Rockford R. I. & St. L. R. R. Co. v. Beckemeier, 72 Ib. 267, merely hold that the form of action may be changed before judgment.

In Thomas v. Fame Ins. Co., 118 Ill. 91, an action was brought on an insurance policy in the name of Thomas for the use of Joseph and Henry Mann. By leave of court the Manns were substituted as plaintiffs, but it does not appear that the declaration was otherwise changed, and the presumption is that it appeared from the declaration that the obligation of the defendant was to the substituted plaintiffs.

Pennsylvania Co. v. Sloan, 125 Ill. 72, merely

holds that if a party is sued by a wrong name, he can avail of the error only by plea in abatement.

Teutonia L. Ins. Co. v. Mueller, 77 Ill. 22, was assumpsit by the administrator of the assured against the insurance company, and a demurrer having been sustained to the declaration, the widow and heirs of the assured were, by leave of court, substituted as plaintiffs. This was the only change made, and the inference is that it appeared from the declaration, and was the ground of the demurrer, that the obligation of the insurance company was to the widow and heirs, and not to the personal representatives of the deceased. There was not even a restatement of the cause of action.

In Chandler, Receiver, v. Frost, 88 Ill. 559, the action was assumpsit to recover the amount of a subscription for stock. An amendment was allowed substituting the Lamar Insurance Company, whose receiver Chandler was, as plaintiff instead of Chandler. There was no change of the cause of action.

Nor was there any change of the cause of action in Challenor v. Niles, 78 Ill. 78; McDowell v. Town et al., 90 Ill. 359; Honore v. Wilshire, 109 Ib. 103; Madderom v. Heath & M. Mfg. Co., 35 Ill. App. 588; or Zipp v. Uhland, 30 Ib. 280, cited by appellee's counsel.

In McCall v. Lee, 120 Ill. 261, also cited by appellee's counsel, the court permitted an amendment to be made to a claim against an estate by changing the name of the claimant after the time limited for filing claims had expired. Held proper, the court saying: "In this case the amendment did not make a new cause of action. The claim, as originally filed, was for the amount of certain notes and other property turned over by appellee to Mrs. Duire, in her lifetime. After the substitution of appellee's name, the claim was still for the same notes and property. April 11, 1881,

the day on which it was filed, was within the two years. When no new cause of action is introduced, courts will allow amendments liberally for the purpose of avoiding the running of the statute.''

Rothschild v. Bruschke, 33 Ill. App. 282, certainly does not support appellee's contention. In that case suit was properly commenced on a promissory note in the names of the indorsees thereof, who, pending the suit, transferred the note by re-indorsement, to their immediate indorser, when a new declaration was filed in the name of the latter as plaintiff. Held, that the new plaintiff could not recover, she not having had title when the suit was commenced.

The plea of the statute was sustained by the evidence for the plaintiff, which was, that the promise averred in the amended declaration, filed January 27, 1896, and on which appellee's counsel say they rely, was made in June or July, 1887, Hopkins testified that his last conversation with defendant in reference to the alleged agreement was August 1, 1888, and Secord testified that his last conversation with defendant was in July or August 1888.

We think it is too plain to require argument, that the Secord-Hopkins corporation can not recover on the undertaking or agreement of the defendant alleged in the original declaration, made, as heretofore stated, with Hopkins and Secord as individuals, prior to the incorporation of the Arcade Trading Company, and on the conditions that they, Hopkins and Secord, would form that corporation, and would engage in business at the Arcade building. In the nature of things, a proposition made to individuals on the condition precedent that they will form a corporation, can not be regarded as a proposition to the yet unborn corporation.

Much stress is laid by appellee's counsel on the

alleged fact that Secord and Hopkins owned nearly all the stock of the Arcade Trading Company and its successor, the Secord-Hopkins Company. The distinction between stockholders in a corporation and the corporation, even though they own or control all the shares of the capital stock, is so well settled that it may be regarded as fundamental. Cook on Stock and Stockholders, etc. (3 Ed.), Secs. 6, 11; Button v. Hoffman, 61 Wis. 20; McTighe v. Macon, etc., Co., 33 L. R. A. 802; Home Nat. Bank v. Waterman, 134 Ill. 461.

A stockholder is not, by reason of being such, even an agent of the corporation. Morawetz on Corp., Sec. 238.

The time when the promise alleged in the amended declaration was made, having been shown by the evidence of appellee to be June or July, 1887, and there being no conflicting evidence as to the time, appellant's plea of the statute was fully proved. The verdict was contrary to the evidence, and should have been for the appellant, and the overruling appellant's motion for a new trial was error.

Had appellant stood by his instruction, before quoted, instead of waiving it by asking other instructions on the merits, we would have no hesitation in saying that it should have been given. This being decisive of the appeal, we omit consideration of other assignments of error. The appellant having departed this life pending the appeal, and his executors having been substituted as appellants, it is suggested by appellee's counsel that if the judgment is reversed, it would be useless to remand the cause, in view of the statutory provisions in relation to evidence. The cause, therefore, will not be remanded. The judgment is reversed.

Mr. Justice Sears dissents.